# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1119 | **DATE** | 8/2/2001 |
| **CASE TITLE** | LOUIS ALLEN, JR., et al vs. BAKE-LINE PRODUCTS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to strike the sworn statements of Palacias, Crawford, Boyd, and Pitts is granted. However, with regard to Post's affidavit, defendant's motion to strike is denied. Status hearing set for 8/29/01 at 9:30a.m.

(11) ■ [For further detail see

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | AUG 0 6 2001 | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 76 |
| | Mail AO 450 form. | ED-7 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG -3 AM 8: 40 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOUIS ALLEN, JR., et al., )
)
    Plaintiffs, )
)
v. ) No. 98 C 1119
) Paul E. Plunkett, Senior Judge
BAKE-LINE PRODUCTS, INC., )
)
    Defendant. )

**DOCKETED**

AUG 0 6 2001

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant's motion to strike the sworn statements of Post, Palacias, Crawford, Boyd, and Pitts, which were filed by plaintiffs in support of their response to defendant's motion for summary judgment. For the reasons provided in this Memorandum Opinion and Order, defendant's motion is granted in part and denied in part.

### Discussion

Defendant has moved to strike the sworn statements of Post, Palacias, Crawford, and Boyd in their entirety because neither the identities of these individuals nor their statements were disclosed in response to defendant's discovery requests. Defendant has also moved to strike Pitts' affidavit because it contains allegations of discrimination that were not testified to in her deposition.



A.  **Does plaintiffs' failure to disclose Post, Palacias, Crawford, and Boyd during discovery bar them from using their affidavits in opposition to defendant's motion for summary judgment?**

Pursuant to Federal Rule of Civil Procedure (Rule) 26(e)(2), a party has a duty to supplement its discovery throughout litigation. The duty to supplement discovery requests lingers on without solicitation by the requesting party. Marianjoy Rehab. Hosp. v. Williams Elec. Games, Inc., 1996 WL 411395 (N.D. Ill. 1996). Failure to supplement discovery can result in, among other things, the exclusion of the new evidence. Holiday Inns, Inc. v. Robertshaw Controls Co., 560 F.2d 856, 858 (7th Cir. 1977).

In Marianjoy Rehabilitation Hospital v. Williams Electronic Games, Inc., 1996 WL 411395 (N.D. Ill. 1996), we observed that:

> It is important in this context to distinguish between "discovery" and "investigation." "Discovery is the process whereby one party learns the evidentiary basis of the opposing party's case and involves an exchange of information. That is the process that ceases at the date discovery is ordered closed. We know of no rule that requires a party to cease the investigation of its own case at the close of discovery. Indeed, Rule 26(e)(2) of the Federal Rules of Civil Procedure is designed, at least in part, to deal with the problem of later-discovered evidence and requires that a party be under a continuing duty to supplement or correct previous responses to certain discovery requests, including a request for production, whenever "the party learns that the [previous] response is in some material way incomplete or incorrect.

Id. at *3.

Initially, in order to assess defendant's argument, we must determine whether Post, Palacias, Boyd, or Crawford, were disclosed during discovery. Only then can we decide what will result from plaintiffs' failure to disclose.

-2-

On December 29, 1998, defendant served each of the fifteen plaintiffs with a "First Set of Interrogatories." (Def.'s Mot. at 1.) Each set of interrogatories included the following two questions:

Interrogatory No. 2

For each paragraph of your complaint and charge, identify each and every person you believe has information relating to that paragraph, specifically describe that information each person possesses, and identify any such individuals with whom you have discussed this matter and the nature and subject matter of any such discussions.

Interrogatory No. 6

State whether you have taken any statements (oral or written, formal or informal) or affidavits or are aware of any statements or affidavits of or by any person with knowledge of the allegations contained in the Complaint. If so, please state the individual's name and identify and documents relating to your answer.

(Id. at 2.) Neither Post, Palacias, Crawford nor Boyd was listed in any of the plaintiffs' responses to these two questions. As a result, defendant claims it first learned of the identity of these potential witnesses when it received plaintiffs' memorandum filed in response to defendant's motion for summary judgment. Apparently, plaintiffs provided defendant with an amended interrogatory disclosing the additional parties, although defendant claims it did not receive the amended interrogatory until plaintiffs filed their response brief.[1] (See Pls.' Resp. at 2; Def.'s Reply at 3.)

We asked plaintiffs to justify their failure to disclose these witnesses during the discovery period. Plaintiffs' response brief indicates that there were several obstacles to reaching potential witnesses during the discovery period. Plaintiffs explained that eight out of fifteen plaintiffs were

---

[1] Plaintiffs failed to provide us with the date the amended interrogatories were sent to defendant. (Pls.' Resp. at 2.)

no longer employed by defendant during the discovery period. (Pls.' Resp. at 3.) As a result, those plaintiffs had no way of contacting possible witnesses. In addition, according to plaintiffs, because of the higher turnover of Blacks than Hispanics in defendant's work force, plaintiffs did not have the opportunity to discuss the work environment experienced by plaintiffs. (Id.) Finally, plaintiffs claim that even after repeated requests, the employees of defendants would not offer any assistance because of fears about losing their jobs or concern over how their fellow Hispanic workers would react. (Id.)

Plaintiffs' counsel also obtained affidavits from twelve of the fifteen plaintiffs, which outlines their specific efforts to locate potential witnesses. The focus of our attention is necessarily on what plaintiffs' effort were with regard to Post, Palacias, Crawford, and Boyd.

Louis Allen is the only plaintiff whose affidavit addresses inquiries directed at Post. In his affidavit, Allen claims that the first time he learned that Post may have information relating to this lawsuit was September or October of 2000. (See Pls.' Resp. at Ex. 7.) According to Allen, he never approached Post prior to that time because he was unaware that she may have information. (Id.) Assuming that Allen did not know that Post was a potential witness until after the close of discovery, then the evidence submitted by Post would be classified as "later-discovered evidence," i.e., evidence obtained as a result of further investigation, that could not have been disclosed during discovery. Marianjoy, 1996 WL 411395 at *3. Therefore, because the acquisition of Post's affidavit does not run afoul of Rule 26, Post's affidavit is admissible.[2]

---

[2]Whether Post's statements should be stricken as violative of any rules of evidence will be addressed as needed with the merits of defendant's summary judgment motion.

-4-

Conchita Pitts is the only plaintiff whose affidavit addresses inquiries directed at Palacias. It is clear from Pitts' affidavit that she knew Palacias to be a potential witness before discovery was closed. Pitts' affidavit states that she "approached Rick Palacias when [she] was an employee at Bake-Line, and I told Rick about the lawsuit. And Ricky wouldn't--he said he couldn't talk to the lawyers. Ricky was scared also." (Pls.' Resp. at Ex. 12.) Later on in her affidavit, Pitts testified that she left Bake-Line in February of 1999. (Id.) Discovery closed in July of 2000. Plaintiffs' explanation is that "[a]s a result of Plaintiffs' continuing diligence and active involvement in their case, additional parties were discovered who had personal knowledge of this case and who expressed a willingness to provide sworn statements concerning such knowledge." (Id. at 2.) We find plaintiffs' explanation puzzling. It is clear that Pitts knew from her experiences that Palacias may have relevant information about plaintiffs' claims. Therefore, plaintiffs had a duty to reveal Palacias in its answers to defendant's interrogatories. Waiting to disclose a potential witness until that witness agrees to cooperate and give a statement is inexcusable. It smacks of having one's cake and eating it too. The revelation comes only after the interview, which reveals helpful information. The obligation to disclose a potential witness arises the moment plaintiffs realize the witness may have knowledge of the facts underlying plaintiffs' claims, not when the witness finally agreed to give a statement that is favorable. Because the evidence submitted by Palacias cannot be classified as "later-discovered evidence," admitting Palacias' affidavit would run afoul of Rule 26. Marianjoy, 1996 WL 411395 at *3. Therefore, Palacias affidavit is stricken.

Senora Miller is the only plaintiff whose affidavit addresses inquiries directed at Crawford and Boyd. In Miller's affidavit, she stated that she approached Crawford and Boyd to be potential witnesses when the lawsuit was initially filed. (Pls.' Resp. at Ex. 6.) The lawsuit was originally

filed in February of 1998. Plaintiffs obviously knew these two had relevant information, and their failure to disclose Crawford and Boyd as potential witnesses until responding to defendant's motion for summary judgment is wrong. To permit it would require stopping the briefing and reopening discovery so defendants could depose the witnesses. Crawford's and Boyd's affidavits are stricken for the same reasons that Palacias' affidavit is stricken.

Even assuming the affidavits of Post, Palacias, Crawford, and Boyd were offered during discovery, several of the statements made in those affidavits would be violative of the rules of evidence and, thus, inadmissible. In other words, we do not believe that including these statements would affect the outcome of defendant's summary judgment motion.

Rule 56(e) governs the form of affidavits. Fed. R. Civ. P Rule 56(e). It states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify in the matters stated therein . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Id. Because Rule 56(e) requires that affidavits "set forth such facts as would be admissible in evidence," hearsay statements are not considered in a summary judgment motion. Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997). In addition, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted." Drake v. Minnesota Mining and Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998).

Because Palacias' affidavit is the primary affidavit used by plaintiffs in response to defendant's motion for summary judgment, we will analyze the admissibility of some of his statements.[3] Some of his statements relied upon by plaintiffs in their 56.1 statements include:

> Paragraph 5: On one occasion when I was in the office attempting to see my personnel file, I overheard Heather Ronnow discussing Conchita Pitts. She said, "Oh, its her again. I can't wait to see how they are going to get rid of her." Heather was definitely referring to Conchita Pitts.[4]
>
> Paragraph 7: I have heard various supervisors say "you fucking niggers are lazy" in Spanish. They use terms such as "pinche chango" (fucking monkey) and "pinche moreno" (fucking nigger) when referring to blacks. Many Spanish words when used as slang or in the context can be racial slurs that would not normally translate as such. The term "negrita" can mean a black girl or nigger, depending on the body language of who was using it and about or to whom. The term "negro" can mean a black person or nigger, depending on the body language of who was using it and about or to whom.[5]
>
> Paragraph 8: I witnessed a black woman on 3rd shift being forced to pour sugar for eight hours recently. She received numerous electric shocks. That position is supposed to be rotated every two hours.[6]
>
> Paragraph 11: I have overheard racial slurs on a daily basis at Bake-Line. Blacks could tell what was being said by the person's body language and demeanor. Blacks are not allowed to congregate. They are kept separated. When they try to talk to each other, a supervisor breaks up the conversation.[7]

---

[3]Palacias' affidavit is cited for support in, among other places, Pls.' 56.1(b)(3)(A) Stmt. ¶¶ 13, 90, 190, 357, and 453, and Pls.' 56.1(b)(3)(B) Stmt. ¶¶ 249, 276, 371, and 490.

[4]Pls.' 561.(b)(3)(B) Stmt. ¶ 371.

[5]Id. at ¶ 276.

[6]Id. at ¶ 13.

[7]Id. at ¶ 490.

Paragraph 12: White supervisors who didn't speak Spanish, such as Tom Stuker and Glen Miller, were assigned Hispanic workers who spoke English, non-English speaking Hispanics were assigned to Hispanic supervisors.[8]

Paragraph 13: Blacks are not provided adequate training. Hispanics are given instruction and training in greater detail. Blacks are merely given basic instructions and told to do the job. They have to learn themselves while doing the job.[9]

Defendant argues that paragraph 5 of Palacias' affidavit constitutes inadmissible hearsay, is irrelevant, and/or lacks a proper foundation. (Def.'s 56.1(a)(3)(B) Stmt. ¶ 371.) Paragraph 5 is probably inadmissible hearsay. According to Fed. R. Evid. (Rule) 801(c), hearsay is a statement offered in evidence to prove the truth of the matter asserted. In order to determine whether an out of court statement constitutes hearsay, we must determine what the evidence is being offered to prove. If the statement is being offered for its truth and is not otherwise proper under Fed. R. Evid. 801 or an exception to the hearsay rule under Fed. R. Evid. 803 or 804, then it is inadmissible hearsay. If the statement is being offered for some other relevant purpose, then it is not hearsay and will be admissible. In order to be relevant, the statement has to be offered for its truth, i.e., to prove that defendant was trying to find a way to terminate plaintiff because of her race. Assuming the statement is being offered for that purpose, then it is hearsay. Plaintiffs would probably argue that the statement is being offered for its truth, i.e., that defendant was trying to terminate Pitts because of her race, but that the statement is admissible under Rule 801(d)(2)(D) as an admission by a party opponent. Rule 801(d)(2)(D) states that "a statement by the party's agent or servant concerning a matter within the scope of the agency of employment, made during the existence of the relationship"

---

[8]Pls.' 56.1(b)(3)(A) Stmt. ¶ 90.

[9]Pls.' 56.1(b)(3)(B) Stmt. ¶ 249.

-8-

is not hearsay. Our problem with this argument would be that there is no indication from the context of Palacias' statement that Heather Ronnow has the capacity to bind defendant. In other words, it is not clear that Heather was acting within the scope of her employment when the statement was made. Halloway v. Milwaukee County, 180 F.3d 820, 824 (1999), involved facts similar to this case. In Halloway, a judicial court commissioner brought suit against defendants alleging, inter alia, age discrimination. In an affidavit submitted by Halloway, he stated that "Gary Barczak and George Rice had told him that some of the defendants had stated to Barczak and Rice that they wanted to force Commissioner Halloway from office." Id. at 824. In excluding this evidence, the district court rejected plaintiff's argument that the statements were not hearsay because they were made by an agent in the scope of his agency: "in the employment discrimination context, a statement concerning the employer's reasons for the adverse action is admissible only if the speaker was involved in the decision-making process on which he spoke." Id. The Seventh Circuit affirmed the district court's holding. Like Gary Barczak and George Rice, Heather Ronnow was not involved in the decision-making process on which she spoke. This is evidenced by the context of her statement. She stated that "I can't wait to see how they are going to get rid of her." This demonstrates that Heather had no power to affect Conchitta Pitts' employment with defendant and, therefore, the statement does not constitute non-hearsay under 801(d)(2)(D). As a result, paragraph 5 would be inadmissible.

Defendant contends that paragraph 7 is inadmissible because it lacks a proper foundation. We agree. Paragraph 7 fails to demonstrate which supervisors made the alleged racial slurs, when the statements were made, and to whom the statements were directed. Because we don't know when the statements were made, the allegations contained in paragraph 7 may be time-barred. Also, even assuming the statement is timely, because we do not know to whom the statements were directed,

we do not know if the statements are relevant. Black v. Zaring Homes, Inc., 104 F.3d 822, 826-827 (6th Cir. 1997)(statements not directed at plaintiffs are not severe enough to create an objectively hostile environment). Therefore, paragraph 7 would be inadmissible.

Defendant contends that paragraph 8 is inadmissible because Palacias does not identify who the alleged Black employee is, who failed to rotate her, and the basis for his knowledge as to this fact. (Def.'s 56.1(a)(3)(B) Stmt. ¶ 13.) We agree. Paragraph 8 fails to demonstrate that Palacias has sufficient knowledge of these facts so that he would be competent to testify. In addition, because we do not know when the alleged incident occurred, we are unable to determine whether the allegation is time-barred. As a result, paragraph 8 would be inadmissible.

Defendant contends that paragraph 11 is inadmissible because Palacias failed to demonstrate the time period of the alleged conduct. Paragraph 11 also fails to indicate who made the statements to whom. The relevance of these statements depends on whom they were being directed to. If the statements were not directed towards plaintiffs, then they are irrelevant. Black, 104 F.3d at 826-827(statements not directed at plaintiffs are not severe enough to create an objectively hostile environment). The context of paragraph 11 suggests that the statements were not being directed at plaintiffs, but rather among their co-workers. As a result, paragraph 11 may not only be time-barred, but may be irrelevant to the instant case. Therefore, paragraph 11 would be inadmissible.

Paragraph 12 by itself is wholly irrelevant. The fact that white supervisors who don't speak Spanish are assigned Hispanic workers who speak English, while non-English speaking Hispanics were assigned to Hispanic supervisors, has no evidentiary value. In fact, it suggests good business judgment on the part of defendants. Only if this statement is coupled with an allegation that Black supervisors are or were not extended the same courtesy would paragraph 12 be relevant to the instant

case. Plaintiffs attempted to do this in their response to Def.'s 56.1(a)(3) Stmt. ¶ 190. However, plaintiffs failed to cite where in the record this information derived from and, thus, the supporting statement cannot be considered. Without the latter statement, the former statement fails. Therefore, paragraph 12 would be inadmissible.

Defendant contends that paragraph 13 is inadmissible because it is conclusory in nature. We agree. Paragraph 13 is conclusory because there is no factual basis in this statement for plaintiffs' assertion that defendant failed to adequately train Blacks, or that Hispanics were adequately trained. Because of the conclusory nature of the statement, there is no indication that Palacias has personal knowledge of these facts or that he would be competent to testify as to the truth of this statement. As a result, paragraph 13 would be inadmissible.

### B. Should Pitts' affidavit be stricken because it contains allegations of discrimination that were not testified to in her depositions?

On June 8, 1998, July 20, 1998, August 5, 1999, and August 6, 1999, Pitts was deposed by defendant. (Def.'s Mot. at 3.) During her depositions, Pitts described several alleged acts of discrimination and the parties involved in those acts. (Id.) Defendant asked Pitts several times during the taking of the depositions, and at the end of the last deposition, if she knew of any other acts of discrimination. (Id. at 3-5.) She replied that she did not.

Pitts' affidavit contains allegations of discrimination which were not revealed in her deposition testimony. Defendant contends that these new allegations "contradict" her deposition testimony because she claimed to know of no other acts of discrimination and, therefore, the new allegations should be stricken. (Id. at 5.) Plaintiffs claim that because Pitts could recall new alleged

acts of discrimination in each deposition, then Pitts can recall new alleged acts of discrimination now.

We find Buckner v. Sam's Club, 75 F.3d 290, 292 (7th Cir. 1996), to be dispositive. Buckner held that affidavits offered in opposition to a summary judgment motion that contradict earlier testimony are permissible only if they clarify ambiguous or confusing deposition testimony, or if the affiant lacked access to materials and the affidavit sets forth the newly discovered evidence. See also George v. Burlington Northern Railroad Co., 1994 WL 523713 (N.D.Ill. 1994). In Buckner, Linda Buckner slipped and fell at Sam's Club while perusing a temporary display of watches and jewelry. Buckner, 75 F.3d at 291. In her deposition, Linda denied knowing precisely what the object was, but she did offer a general description of the object. Id. at 293. In a subsequent affidavit, Linda claimed that the object "felt to be about the size of a ladies' watch." Id. While the Seventh Circuit conceded that this was not a traditional contradiction, it excluded the evidence stating: "The concern in litigation, of course, is that a party will first admit no knowledge of a fact but will later come up with a specific recollection that would override the earlier admission." Id. Like Linda, Pitts claimed in her deposition to have no other knowledge of facts supporting her claims. Subsequently, again like Linda, Pitts' affidavit added new evidence in support of her claims.

As stated above, according to Buckner and George, the only way new evidence is admissible is if the affiant lacked access to material facts. Buckner, 75 F.3d at 292; George, 1994 WL 523713 at *2. The last time Pitts was deposed was August of 1999, after she was no longer employed at Bake-Line. All of the new alleged discriminatory acts described in Pitts' affidavit occurred while she was employed at Bake-Line. Pitts gives us no explanation as to why she is now able to recall

We find Buckner v. Sam's Club, 75 F.3d 290, 292 (7th Cir. 1996), to be dispositive. Buckner held that affidavits offered in opposition to a summary judgment motion that contradict earlier testimony are permissible only if they clarify ambiguous or confusing deposition testimony, or if the affiant lacked access to materials and the affidavit sets forth the newly discovered evidence. See also George v. Burlington Northern Railroad Co., 1994 WL 523713 (N.D.Ill. 1994). In Buckner, Linda Buckner slipped and fell at Sam's Club while perusing a temporary display of watches and jewelry. Buckner, 75 F.3d at 291. In her deposition, Linda denied knowing precisely what the object was, but she did offer a general description of the object. Id. at 293. In a subsequent affidavit, Linda claimed that the object "felt to be about the size of a ladies' watch." Id. While the Seventh Circuit conceded that this was not a traditional contradiction, it excluded the evidence stating: "The concern in litigation, of course, is that a party will first admit no knowledge of a fact but will later come up with a specific recollection that would override the earlier admission." Id. Like Linda, Pitts claimed in her deposition to have no other knowledge of facts supporting her claims. Subsequently, again like Linda, Pitts' affidavit added new evidence in support of her claims.

As stated above, according to Buckner and George, the only way new evidence is admissible is if the affiant lacked access to material facts. Buckner, 75 F.3d at 292; George, 1994 WL 523713 at *2. The last time Pitts was deposed was August of 1999, after she was no longer employed at Bake-Line. All of the new alleged discriminatory acts described in Pitts' affidavit occurred while she was employed at Bake-Line. Pitts gives us no explanation as to why she is now able to recall events she could not remember years earlier, i.e., why Pitts lacked access to material facts. There has to be some point at which the exchange of evidence ceases. When a party moves for summary judgment, they are doing so based on the evidence in the record. Therefore, because Pitts' new

evidence did not result from access to material facts that she previously did not have, plaintiffs had a duty to disclose the information contained in Pitts' affidavit during discovery, not in its response to defendant's summary judgment motion. As a result, Pitts' affidavit is stricken.

### Conclusion

For the reasons stated herein, defendant's motion to strike the sworn statements of Palacias, Crawford, Boyd, and Pitts is granted. However, with regard to Post's affidavit, defendant's motion to strike is denied.

**ENTER:**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

DATED: _8-2-01_