## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1119 | **DATE** | 10/16/2001 |
| **CASE TITLE** | LOUIS ALLEN, JR.,ET AL vs. BAKE-LINE PRODUCTS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion for summary judgment is granted as to each of the individual plaintiffs. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

TBK

courtroom deputy's initials

EB-7
FILED FOR DOCKETING
01 OCT 17 AM 10: 47

number of notices
OCT 1 8 2001
OCT 1 8 2001
date docketed
docketing deputy initials

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

78

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS ALLEN, JR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 98 C 1119 |
| | ) | Paul E. Plunkett, Senior Judge |
| BAKE-LINE PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant Bake-Line Products, Inc.'s ("Bake-Line") Fed. R. Civ. P.

(Rule) 56 motion for summary judgement. For the reasons provided in this Memorandum Opinion

and Order, Bake-Line's motion is granted.



## Facts

This is a race discrimination, retaliation, and hostile work environment case brought by

fifteen African-American workers against Bake-Line. Bake-Line is a cookie manufacturer that sells

cookies to the retail supermarket industry. (Bake-Line's 56.1(a)(3) Stmt. ¶ 2.) The majority of

employees at Bake-Line's facility are Hispanic, with the next largest group of employees being

African American. (Id. at 3.) Plaintiffs contend that they have been subjected to racial slurs and that

announcements over the public address system are given in Spanish only. Plaintiffs also claim that

non-blacks have been promoted who have less seniority, promotions are given to non-African-

Americans without the posting of their availability, African Americans are not given equal training opportunities, and Company rules and procedures are implemented unequally.

## The Legal Standard

Federal Rule of Civil Procedure 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir. 1992). "If no reasonable jury could find for the party opposing the motion, it must be granted." Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995) (citing Anderson, 477 U.S. at 248).

## Discussion

Before going into the merits of this case, it is worth noting that the parties, especially plaintiffs, have made the task of assessing the merits of plaintiffs' claims much more difficult than it needed to be. In essence, this is, after all, a straight forward Title VII case involving multiple defendants. The only real difference between this case and other Title VII cases is the quantity of evidence. We are not suggesting that the record in this case, which consists of several thousand

pages, is easily organized in defending a summary judgment motion. However, it was barely organized at all.

Our difficulty in assessing this motion began with Bake-Line's argument that several of the matters testified to by plaintiffs were time-barred. Bake-Line spent one page in its opening brief addressing this issue, and even less time in its response brief. In addition, assuming we agreed with Bake-Line's theory that there was no continuing violation, Bake-Line gave us no guidance as to which of the more than one thousand fact statements would be barred. The only help Bake-Line gave us was providing the earliest possible date in which each plaintiff's evidence could be entertained. Without dates accompanying the facts, that information is worthless.

When it came time to assess the merits of plaintiffs' claims, plaintiffs could not have intentionally made our task more difficult. Plaintiffs' misinterpretation of Title VII law and lack of factual support made our task of assessing their claims arduous. Specifically, plaintiffs' counsel does not seem to understand the different methods for meeting its *prima facie* burden under Title VII. Plaintiffs' counsel has confused the difference between presenting direct and indirect evidence under the McDonnell Douglas framework. Even within that framework, plaintiffs' counsel failed to allege any facts in the Title VII section of their brief, instead referring us to other sections of the brief which deal with different claims. It is impossible for an individual plaintiff to meet his or her burden under McDonnell Douglas without alleging any facts. As a result, we were faced with the task of looking elsewhere in plaintiffs' response brief to determine if plaintiffs had any viable claims. In addition, when plaintiffs decided to recite facts in their response brief, frequently there was no cite to the record.

In its summary judgment motion, Bake-Line argues: (A) many of the matters about which plaintiffs testified are time barred; (B) plaintiffs' discrimination and retaliation claims fail because plaintiffs are unable to demonstrate any materially adverse employment actions; and (C) plaintiffs' hostile work environment claims fail because plaintiffs cannot demonstrate that the harassment was sufficiently severe or pervasive enough to alter the conditions of their employment and create an abusive environment.

A.    Are any of the matters testified about by plaintiffs time barred?

As stated above, if we were to agree with Bake-Line that certain facts were time-barred, it would be impossible for us to determine which of the more than one thousand fact statements were still viable. As a result, and because we find that including all of the statements will not prejudice Bake-Line, we will assume that none of the facts in the record are time-barred.

B.    Have plaintiffs stated a prima facie case of intentional discrimination?

"To succeed with a Title VII claim[1], a plaintiff must demonstrate that the employer terminated his job because of intentional discriminatory reasons." Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999)(internal citations omitted). Under Title VII, a plaintiff may prove discrimination through either direct or circumstantial evidence or under the indirect burden-shifting method enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

---

[1]Claims brought under § 1981 are analyzed under the same framework as claims brought pursuant to Title VII. Bratton v. Roadway Package Sys., 77 F.3d 168, 176 (7th Cir. 1996).

-4-

Bake-Line's response brief indicates that Bake-Line is assuming plaintiffs are trying to survive summary judgment by satisfying the elements enunciated in McDonnell Douglas. However, while plaintiffs' response brief cites McDonnell Douglas in its Title VII/§ 1981 section, they make no mention of the four elements of McDonnell Douglas and provide no facts in support thereof. In fact, plaintiffs' Title VII/§ 1981 section contains no facts at all.

Plaintiffs claim they have direct evidence of race discrimination:

> In addition to the circumstantial evidence, Plaintiffs have direct evidence of racial discrimination and harassment. Direct evidence of Plaintiffs include the findings of the investigation conducted by the OFCCP which found that supervisory jobs were given to non African-American employees with less seniority, that African-American females did not know positions were open since there was no posting of open positions, and the testimony of management personnel [Hispanics] that they received their positions by appointment, not through postings or seniority.

(Pls.' Resp. at 12-13.) Plaintiffs' assertion that this evidence constitutes direct evidence of intentional discrimination is incorrect. "Direct evidence [of race discrimination] essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Bake-Line has made no such admission. Therefore, like most race discrimination cases, the record in the instant case is devoid of any direct evidence of race discrimination. As such, our analysis is limited to circumstantial evidence.

In their response brief, plaintiffs claim that there are other ways to prove intentional discrimination than the McDonnell Douglas, approach. Specifically, plaintiffs claim there are three types of circumstantial evidence of intentional discrimination that may be used by a Title VII plaintiff to avoid summary judgment in the Seventh Circuit. (Pls.'s Resp. at 11.) Plaintiffs contend

that "[t]he first consists of suspicious timing, ambiguous statements oral or written, *behavior toward or comments directed at other employees in the protected group*, and other bits and pieces from which an inference of discriminatory intent might be drawn. Giacolletto v. Amaz Zinc. Co., 954 F.2d 424 (7th 1992); Holland v. Jefferson Nat'l Life Ins. Co, 883 F.2d 1207, 1314-15 (7th Cir. 1989) (emphasis provided by plaintiffs)." Our first problem with plaintiffs' assertion is that the italicized language is not contained in either case. Our second problem with plaintiffs' assertion is that the type of evidence described by plaintiffs falls under the McDonnell Douglas approach, not the direct/circumstantial approach. In both Giacolletto and Holland, the evidence was analyzed under the McDonnell Douglas framework, as it had to be, because the evidence offered by the plaintiffs was indirect. Therefore, once again, we are puzzled by plaintiffs' explanation of Title VII/§ 1981 law.

Plaintiffs also claim that an alternative to the McDonnell Douglas approach is "evidence that the plaintiff was qualified for the job in question but passed over in favor of a person not having the characteristics of the protected class and the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. St. Mary's Honor Ctr., 113 S. Ct. at 2749." (Pls.' Resp. at 12.) Once again, plaintiffs are confusing the direct/circumstantial evidence approach with the McDonnell Douglas approach. In fact, plaintiffs' description of this "other method" essentially is *the* McDonnell Douglas burden-shifting approach.

Finally, plaintiffs claim that "forms of statistical evidence used to demonstrate a difference in treatment among classes of employees" is an alternative method to the McDonnell Douglas approach. Statistics can be used to prove discriminatory intent. EEOC v. O & G Spring & Wire Forms Specialty Co., 38 F.3d 872, 876 (7th Cir. 1994). However, "statistics, like any evidence, are

not irrefutable; strong statistics may prove a case on their own, while shaky statistics may be insufficient unless accompanied by additional evidence." Id. (internal citations omitted). In the context of employment discrimination claims, "statistics can only show a relationship between an employer's decisions and the affected employees' traits; they do not show causation." Radue v. Kimberly-Clark Corp. 219 F.3d 612, 616 (7th Cir. 2000)(internal quotations omitted). Standing virtually alone, statistics cannot establish a Title VII case of individual disparate treatment. Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir. 1997); Adams v. Ameritech Serv., Inc., 231 F.3d 414, 423 (7th Cir. 2000). With these principals in mind, we turn to plaintiffs' statistical evidence.

Plaintiffs' statistical evidence consists of the findings contained in the Employment Standards Administration, Office of Federal Contract Compliance Programs ("OFCCP") Conciliation Agreement, which was reached in 1997. (See Pls.' Ex. Vol II, Tab A at 6.) The OFCCP concluded that under the job category of "craft" the City of Chicago Statistical Labor Area consisted of 31.6% African-Americans and 43.2% Hispanics; the "operative" job group consisted of 37.5% African-Americans and 38.1% Hispanics; and the "laborer" job group consisted of 36.9% African-Americans and 48.34% Hispanics. Id. At Bake-Line, the "craft" job group contained 2.8% African-Americans and 84.9% Hispanics; the "operative" job group contained 1.4% African-Americans and 96.3% Hispanics; and the "laborer" job group contained 3.3% African-Americans and 92.9% Hispanics. Id. At first glance, the statistics appear to be probative. In fact, it appears to be one of plaintiffs' strongest argument. Unfortunately, besides one short paragraph, plaintiffs spent no time demonstrating the implication of these numbers. As a result, we have no idea whether these statistics are relevant to the plaintiffs in this case. To be relevant, we would have to know, inter alia, that

plaintiffs were working in, or applied for and were denied a promotion to one of the job groups analyzed by the OFCCP. In addition, we are unable to determine on our own whether the relevant labor pool with which to compare Bake-Line's percentages would be applications received by Bake-Line, or the general population. Furthermore, as evidenced by the Conciliation Agreement, the statistics alone are unreliable because "the positions within these Job Groups are subject to a bid process current union employees under their Collective Bargaining Agreement." For all we know, the percentages of African-Americans versus Hispanics covered by the Collective Bargaining Agreement are different from those in the various job groups. Plaintiffs' lack of interest in the statistical evidence set forth in the Conciliation Agreement makes it impossible for us to determine its probative value. We are not ruling out the possibility that this evidence has some relevance if interpreted in light of the entire record. However, considering the size of the record in this case, and plaintiffs' failure to provide any roadmap with which to determine its relevance, the statistics are of little help to plaintiffs in establishing intentional discrimination. It is not our job to present plaintiffs' evidence in a decipherable manner. We now turn to plaintiffs' indirect evidence.

Although plaintiffs' counsel has failed to provide evidence of individual intentional discrimination in a logical manner, we have elected to look at the facts in plaintiffs' response brief *in toto* to determine whether there are sufficient facts by which any of the plaintiffs can sustain his or her burden under the McDonnell Douglas framework. Under the McDonnell Douglas burden-shifting approach, each plaintiff must demonstrate that he or she: (1) is within a protected class; (2) was meeting his or her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) has evidence from which it can be inferred that the adverse action arose from a legally forbidden ground. Id.; see also Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 142 (2000);

Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158-159 (7th Cir. 1996). Once a plaintiff has met his

or her initial burden under McDonnell Douglas, "[t]he burden then shifts to [Bake-Line] to articulate

some legitimate, nondiscriminatory reason for [plaintiff's] rejection." Id. In the event Bake-Line

is able to meet its burden, the plaintiff is "afforded a fair opportunity to show that [Bake-Line's]

stated reason for [plaintiff's] rejection was in fact pretextual." McDonnell Douglas, 411 U.S. at 804.

In a case recently decided by the Seventh Circuit, Freeman v. Madison Metropolitan School District,

231 F.3d 374, 379 (7th Cir. 2000), the Court explained that "[i]ndirect evidence of pretext showing

that an employer's proffered reasons for an adverse employment action are not credible in a Title VII

suit can include evidence that the reasons are without basis in fact . . . ." Plaintiffs must come

forward with facts establishing that Bake-Line is or was treating "some people less favorably than

others because of their race . . . ." International Bhd. of Teamsters v. United States, 431 U.S. 324,

335 (1977).


### Louis Allen, Jr.

In response to Bake-line's motion for summary judgment, Louis Allen (Allen) has alleged

the following facts: Allen was put on the most difficult line without adequate training (Pls.' Resp.

at 18); when he tried to report his lack of training to Anabella Post, he was told to go back to work

(id.); Allen was given jobs nobody else wanted (id.); Allen was subjected to racial slurs, including

being called what he thought was "nigger" and "chocolate shit" in Spanish by coworkers (id.); when

Ingram, another plaintiff, notified a supervisor of the racial slurs, the supervisor laughed (id.).

**Monica Bailey**

In response to Bake-line's motion for summary judgment, Monica Bailey (Bailey) has alleged the following facts: despite her seniority, people were promoted ahead of her (Pls.' Resp. at 18); she was subjected to racial slurs by supervisors and coworkers (id.); because Hispanics would only translate when they wanted to, she would not know where she was supposed to report to work (id.); the Union would only entertain grievances brought by Hispanics (id.); she did not apply for a promotion because she did not believe they would train her and they would use her inadequacy as a basis for firing her (id. at 35).

**Gust Brown**

In response to Bake-line's motion for summary judgment, Gust Brown (Brown) has alleged the following facts: Brown would have his position changed (Pls.' Resp. at 19); he would be taken off of better equipment so Hispanics could use it (id.); he was not given the same consideration as Hispanics with respect to water or other breaks (id.); he was given harder work assignments than Hispanics (id.); a supervisor was always picking on Brown (id.).

**Beatrice Champion**

In response to Bake-line's motion for summary judgment, Beatrice Champion (Champion) has alleged the following facts: she was moved from her position on numerous occasions (Pls.' Resp. at 20); if Hispanics didn't want an African-American on the line, she was moved (id.); on a daily basis, she was subjected to racial slurs (id.); Champion declined a promotion because she felt it was a bad working environment (id.); although she didn't speak Spanish, she was not given

assurances that if she accepted a promotion she would be assigned English-speaking workers (id.).

### Catherine Cokley

In response to Bake-line's motion for summary judgment, Catherine Cokley (Cokley) has alleged the following facts: Cokley was constantly moved around and given jobs that Hispanics did not want (Pls.' Resp. at 20); she was subjected to racial slurs; despite higher seniority, Hispanic coworkers were given positions ahead of her (id.); she experienced layoffs out of seniority (id.); because announcements were in Spanish only, she would come back from break and not know where to work (id.).

### James Ingram

In response to Bake-line's motion for summary judgment, James Ingram (Ingram) has alleged the following facts: Ingram was not given the same lunch breaks as his Hispanic coworkers (Pls.' Resp. at 20); Hispanic workers were trained and he was not (id. at 21); he would be moved to another job if a Hispanic wanted his job (id.); he was laid off out of seniority (id.).

### Katherine Leatherwood[2]

In response to Bake-line's motion for summary judgment, Katherine Leatherwood (Leatherwood) has alleged the following facts: Leatherwood heard racial slurs all of the time (Pls.' Resp. at 21); despite voicing an interest in certain jobs, somebody else with less seniority always got those jobs (id.); she had to request a break from her supervisor, while Hispanics did not (id.). The other facts alleged by plaintiffs with respect to Katherine Leatherwood are incomprehensible. As a result, we are disregarding them.

### Kathy Leatherwood

In response to Bake-line's motion for summary judgment, Kathy Leatherwood (Kathy) has alleged the following facts: Kathy believes she was called a "nigger" in Spanish (Pls.' Resp. at 21); she did not sign up to become a machine operator because there was no one there to train her and she did not speak Spanish (id. at 22, 35); African-Americans basically have to learn on their own (id.).

### Terrence McGrue

In response to Bake-line's motion for summary judgment, Terrence McGrue (McGrue) has alleged the following facts: McGrue claims he was laid off out of seniority (Pls.' Resp. at 22); he

---

[2]As if the facts in this case were not confusing enough, there is a plaintiff named Katherine Leatherwood and a plaintiff named Kathy Leatherwood. Apparently, plaintiffs' Katherine Leatherwood is Bake-Line's Kathy Leatherwood, and plaintiffs' Kathy Leatherwood is Bake-Line's Katherine Leatherwood. In addition, plaintiffs' facts with respect to Kathy Leatherwood cite deposition testimony for Katherine Leatherwood. (See Defs.' Reply at 6-7; Pls.' Resp. at 21-22.) As a result, the facts alleged by these two plaintiffs were of little value.

was subjected to racial slurs (id.); upon notifying supervisors, they did nothing to curb the racial slurs (id.); unlike Hispanics, he was not allowed to talk to coworkers when the lines were down (id.).

### Senora Miller

In response to Bake-line's motion for summary judgment, Senora Miller (Miller) has alleged the following facts: Miller was frequently moved from one job to another (Pls.' Resp. at 22); her supervisors did nothing about it (id.); she was subjected to racial slurs by supervisors and coworkers (id.); although she was offered a supervisor position, she turned it down because she did not think they would let her keep the position (id. at 22-23).

### Conchita Pitts

In response to Bake-line's motion for summary judgment, Conchita Pitts (Pitts) has alleged the following facts: Pitts was subjected to racial slurs (Pls.' Resp. at 23); her supervisor laughed when she reported it (id.); her grievances were not being conducted in a fair manner (id.).

### Valarie Shepard

In response to Bake-line's motion for summary judgment, Valarie Shepard (Shepard) has alleged the following facts: despite informing management that she wanted a salaried position, a non-posted position was given to a white male whom she trained (Pls.' Resp. at 23); despite doing the paperwork she was required to do, it would mysteriously disappear from accounting (id. at 24).

**Curtis Slaughter**

In response to Bake-line's motion for summary judgment, Curtis Slaughter (Slaughter) has alleged the following facts: Slaughter was constantly moved from one position to another (Pls.' Resp. at 24); he was subjected to racial slurs by supervisors (id.); he was given tasks that no one else wanted (id.).

**Rose Slaughter**

In response to Bake-line's motion for summary judgment, Rose Slaughter (Rose) has alleged the following facts: Rose claims she was not trained properly (Pls.' Resp. at 25); supervisors would forget about her breaks, so she was forced to request one (id.); she was subjected to racial slurs (id.).

**Jimmie Wynne**

In response to Bake-line's motion for summary judgment, Jimmie Wynne (Wynne) has alleged the following facts: Wynne was subjected to racial slurs (Pls.' Resp. at 25); despite working for Bake-Line for fifteen years, Wynne was never offered a promotion (id.); he did not receive training for the positions in which he was placed (id.); when he asked for training, they would tell him he was too slow and that he would be moved (id.).

All of the plaintiffs are African-American and, therefore, they meet the first element of the McDonnell Douglas test. McDonnell Douglas, 411 U.S. at 802. None of the plaintiffs meet the second element, that they were meeting their employer's legitimate expectations, because plaintiffs never alleged such facts. Id. However, even assuming plaintiffs sufficiently alleged they were meeting their employers legitimate expectations, none of the plaintiffs have alleged a materially

adverse employment action.  Id.  For instance, claims of inadequate training and being shifted from

job to job do not constitute adverse employment actions.   In order to constitute an adverse

employment action, plaintiffs would have to allege that their pay, hours, job title, or quality of

responsibilities was significantly affected by the employer's conduct.  Spencer v. Commonwealth

Edison Co., No. 97C7718, 1999 WL 14486, at *6 (N.D. Ill. Jan. 6, 1999) (even if additional training

may have permitted plaintiff to acquire additional skills, lack of training did not constitute an adverse

employment action where plaintiff's pay, hours, job title and the quality of her responsibilities were

not significantly affected); see also Needy v.  Village of Woodridge, No. 96C5188, 1997 WL

461093, at *6 (N.D. Ill. Aug. 8, 1997).  No such allegations have been made.

Plaintiffs' failure to promote claims are likewise fatal.  Both parties agree that the "most

significant" and/or "determinative" factor in being promoted at Bake-Line is seniority.  (Compare

Def.'s 56.1(a)(3) Stmt. ¶ 148 with Pls.' 56.1(b)(3)(A) Stmt. ¶ 148.)  Therefore, in order for plaintiffs

to establish a case on a failure to promote theory, they would have to allege facts demonstrating that

coworkers with less seniority were promoted ahead of them.  For the most part, the only evidence

plaintiffs have offered is the individual plaintiffs' opinions.  That is insufficient.  The only plaintiff

that appears to have facts suggesting he was treated less favorably despite having seniority is Ingram.

Apparently, Ingram was laid off out of seniority.  (Def.'s 56.1(a)(3) Stmt. ¶ 227.)  However, he filed

a grievance with the Union and was reinstated within two days and paid for his days off.  (Id.)

Considering he was paid for his time off and reinstated immediately, this allegation does not

constitute an adverse employment action.

The failure to promote claims of other plaintiffs that at first glance appeared to have merit

were, in fact, grounded in a mischaracterization of testimony.  For instance, Shepard claims that

despite voicing an interest in a salaried job, the job was given to a person she had trained. (Pls.' Resp. at 23.) Upon reviewing the record, it became clear that Shepard's claim was meritless. It turns out that at the time she was doing the training, she was working for Bake-Line through a temp agency. (Defs.' 56.1(a)(3) Stmt. ¶ 419.) Considering that seniority is the most important factor in determining promotions, and a temporary employee has no seniority, her claim lacks merit. (Compare Def.'s 56.1(a)(3) Stmt. ¶ 148 with Pls.' 56.1(b)(3)(A) Stmt. ¶ 148.)

Plaintiffs have also alleged that they did not apply for promotions because they thought applying would be futile. (Pls.' Resp. at 35.) For some reason, plaintiffs' counsel addressed this theory in the aggregate, despite the fact that several of the plaintiffs never alleged such a theory. The Seventh Circuit has held "that a nonapplicant can be a victim of unlawful discrimination entitled to make-whole relief when an application would have been a useless act serving only to confirm a discriminatee's knowledge that the job he wanted was unavailable to him." International Bhd. of Teamsters v. United States, 431 U.S. 324, 366 (1977). However, "[a] nonapplicant must show that he was a potential victim of unlawful discrimination." Id. at 368. This is where plaintiffs' claims fail. Once again, plaintiffs' evidence rests primarily on their own opinions. Mere opinions are insufficient because they fail to demonstrate that the person who made the opinion is competent to testify as to the truth of the opinion.

Plaintiffs have devoted a section of their brief to termination and retaliation claims. (Pls.' Resp. at 36.) It includes facts relating to Pitts, Slaughter, and Allen. However, with respect to those facts, plaintiffs have failed to cite to the record. As a result, we are unable to determine the validity of plaintiffs' assertions. Therefore, we find plaintiffs' claims for termination and retaliation fail.

The allegations contained in the individual fact statements above relating to harassment are not relevant to whether plaintiffs were subjected to disparate treatment. In order to be relevant, plaintiffs would have had to demonstrate that they were subjected to adverse employment actions. However, the harassment allegations are relevant to whether plaintiffs were subjected to a hostile work environment.

C.     Have plaintiffs stated a viable hostile work environment claim?

Plaintiffs' counsel contends that in order to state a hostile work environment claim, plaintiffs must prove:

> (1) that they were members of a protected class; (2) that they were subjected to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment was severe or pervasive enough to alter the conditions of their employment and create an abusive working environment; and (5) that some basis for employer liability has been established.

(Pls.' Resp. at 13.) Plaintiffs counsel has cited White v. The Money Store, 1997 U.S. Dist. LEXIS 10143 (N.D. Ill. 1997). If plaintiffs' counsel had actually taken the time to read this entire case, they would know that the Seventh Circuit does not use the five-step approach for Title VII harassment claims. Just two paragraphs below plaintiffs' quotation, the Seventh Circuit stated: "this court declined to adopt a multi-factor test for Title VII harassment claims because such a test has the potential for a mechanical application that overlooks or under emphasizes the most important feature of the harassment inquiry . . . instead this court reviews Title VII harassment claims under both an objective and subjective standard." White, 1997 U.S. Dist. LEXIS 10143 at *6 (internal citations and quotations omitted).

In Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998), the Supreme Court set out the elements necessary for a plaintiff to establish an actionable sexually hostile work environment. Later, the Seventh Circuit held that the sexual harassment standard enunciated in Faragher applied to racial harassment suits under Title VII. Hardin v. S.C. Johnson & Sons, Inc., 167 F.3d 340, 345 (7th Cir. 1999). Faragher states:

> [I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so. We directed courts to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

In other words, the harassment "must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive environment." Tutman v. WBBM-TV, Inc., 209 F.3d 1044, 1048 (7th Cir. 2000) (Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). However, "offhand comments . . . will not amount to discriminatory changes in the 'terms and conditions' of employment." Faragher, 524 U.S. 775 at 788. In addition, isolated racial comments do not demonstrate a severe or pervasive environment. Nguenjuntr v. Metropolitan Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998).

Plaintiffs' hostile work environment claims fail because each plaintiff has failed to demonstrate that the harassment to which he or she was subjected was "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive environment." Tutman, 209 F.3d at 1048. For instance, Allen claims he was subjected to racial slurs. (Pls.' Resp. at 18.) That assertion alone is of little help. In order to conclude that this conduct creates an

objectively and subjectively offensive environment for him, we would need to know the frequency with which he was subjected to racial slurs and whether the comments were directed at him or at coworkers. Several of plaintiffs' assertions are irrelevant. For instance, being called "stupid," "lazy," a "motherfucker," a "bitch" and the like are not probative of whether a racially hostile work environment existed because these type of statements are not racially motivated. Hardin, 167 F.3d at 346. In addition, Brown's allegation that an unidentified person sprayed something on him on two occasions and an unknown person tampered with his Maalox is irrelevant. (See Def.'s Mot. Summ. J. at 30.) Without knowing who was responsible for these alleged acts, there is no way to determine whether the acts were racially motivated. For all we know, one of Brown's African-American coworkers tampered with his Maalox. In addition, like several other of plaintiffs' facts supporting a hostile work environment, Brown's allegations lack a proper foundation because he is unable to identify the wrongdoer(s).

## Conclusion

Plaintiffs have not created a genuine issue of material fact with respect to any of their claims. Amongst the thousands of pages of record in this case, such facts may exist. However, it is plaintiffs' duty, not ours, to present the facts in a manner that creates a genuine issue of material fact. That duty is heightened in a case such as this where the record literally consists of volumes. Plaintiffs' difficulty in trying to create a genuine issue of fact was not based on credibility issues. Determining credibility lies in the province of the jury. The hurdle which plaintiffs could not overcome was presented <u>sufficient admissible</u> evidence. Defendants' motion for summary judgment is granted as to each of the individual plaintiffs. This is a final and appealable order.

**ENTER:**

_____

**UNITED STATES SENIOR DISTRICT JUDGE**

**DATED:** _10-16-01_